**Affirmed and Memorandum Opinion filed December 30, 2014.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-13-00848-CV

---

## CINDY DO, INDIVIDUALLY A/N/F DAVID DO, A MINOR, Appellant

## V.

## MINH NGUY, Appellee

---

**On Appeal from the 125th District Court
Harris County, Texas
Trial Court Cause No. 2012-42980**

---

## M E M O R A N D U M   O P I N I O N

Appellant Cindy Do, individually and as next friend of her minor son, David Do, filed suit against appellee, Minh Nguy, her neighbor's landlord. Do alleged that Nguy negligently failed to enforce a pet-weight restriction contained in the neighbor's lease, and that his negligence was a proximate cause of her son being bitten by the neighbor's dog. Nguy filed a hybrid traditional and no-evidence motion for summary judgment on Do's negligence cause of action asserting,

among other grounds, that he did not owe a duty to Do's son. The trial court granted the motion without specifying the reason.

On appeal, Do argues the trial court erred when it granted the motion for summary judgment because the evidence established that Nguy owed her son a duty. Because undisputed summary judgment evidence established that Nguy had no actual knowledge of either the presence of the dog in the neighbor's house or of any danger posed by the dog, we conclude he did not owe Do's son a duty of care. We therefore affirm the trial court's summary judgment.

## BACKGROUND

Nguy agreed to lease a home to Patricia Benavides and her family. Aware that Benavides desired a pet dog for her children, Nguy agreed to change the printed no pets provision in the lease to allow the Benavides family to have a small pet weighing less than 25 pounds.

The lease provided that if the tenant violated the agreement allowing a pet on the premises, Nguy could take any or all of the following actions: (1) declare the tenant to be in default of the lease; (2) charge the tenant additional rent; (3) "remove or cause to be removed any unauthorized pet . . . by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet;" and (4) charge the tenant any costs incurred by Nguy as a result of the unauthorized pet.

The lease also defined the circumstances in which Nguy could enter the leased property:

> Access: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally,

2

Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact tenant and without notice to (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

While the record does not reveal exactly when the Benavides family obtained their dog, it was undisputed that at the time of the incident at issue here, the Benavides family owned—and kept on the leased premises—a pit bull dog weighing approximately 60 pounds. The evidence was also undisputed that Nguy did not enter the leased premises after the lease was signed. Finally, the evidence was undisputed that prior to the incident at issue here, Nguy had never seen the Benavides family's dog and was not aware that they had actually obtained a dog, that the dog exceeded the 25-pound weight limit, or that it possessed any dangerous propensities.

Do and her son David lived next door to the Benavides family. David became friends with the Benavides children and frequently visited their home. David testified that he was familiar with the Benavides family's dog as a result of his visits. He also testified that the dog had never previously done anything to him and that Benavides never warned him about the dog or told him to stay away from the dog.

The summary judgment evidence also included David's deposition testimony regarding the dog bite incident. David testified that he was on the Benavides family's living room floor playing with the dog and trying to teach him to roll over. David explained that he had a piece of jerky in his right hand and was bending over petting the dog on the head and looking him in the eye when the dog lunged and bit him on the face.

3

Following the dog bite, Do sued Nguy as Benavides' landlord for negligently failing to enforce the 25-pound pet weight limit. Nguy eventually filed a hybrid traditional and no-evidence motion for summary judgment arguing that he, as the Benavides family's landlord, owed no duty to David, a third-party neighbor. Nguy also asserted that there was no evidence of any action or inaction by Nguy that caused David's injury or that the dog's weight proximately caused David's injury.

In response, Do argued that Nguy undertook a duty to David when he changed the lease to allow Benavides to have a pet on the leased premises as long as it weighed less than 25 pounds. Do argued this duty is based on Nguy's testimony that he added the weight-restriction not only to protect his leased property but also for safety reasons. Do also asserted that the summary judgment evidence raised genuine issues of material fact on whether Nguy breached that duty when he failed to inspect the premises or even inquire about the size of the Benavides' dog, and on whether Nguy's breach proximately caused David's serious injuries.

The trial court granted Nguy's hybrid motion without specifying the grounds. This appeal followed.

**ANALYSIS**

Do brings two issues on appeal, which we consolidate into a single issue. In that consolidated issue, Do argues that the trial court erred when it granted Nguy's motion for summary judgment because the summary judgment evidence established that Nguy undertook a duty to inspect the premises to ensure Benavides complied with the pet weight restriction, and that his failure to inspect the premises or even inquire about the size of the Benavides' dog breached that duty and proximately caused David's injuries.

4

We address this issue under the familiar summary judgment standard of review as stated in *D'Andrea v. Epstein, Becker, Green, Wickliff & Hall, P.C.*, 418 S.W.3d 791, 795 (Tex. App.—Houston [14th Dist.] 2013, pet. denied).

To prevail on a negligence claim, a plaintiff must prove the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach. *Mindi M. v. Flagship Hotel, Ltd.*, 439 S.W.3d 551, 557 (Tex. App.—Houston [14th Dist.] 2014, pet. filed). The plaintiff bears the burden to produce evidence of duty, and liability cannot be imposed if no duty exists. *E. I. DuPont de Nemours & Co. v. Roye*, No. 14-12-00740-CV, 2014 WL 3908058, at *7 (Tex. App.—Houston [14th Dist.] Aug. 12, 2014, no pet.). Whether a duty exists is a question of law for the court to decide from the facts surrounding the occurrence at issue. *Id.*

In his motion for summary judgment, Nguy argued that he did not owe a duty to David. Nguy cites *Batra v. Clark* in support of his argument. 110 S.W.3d 126 (Tex. App.—Houston [1st Dist.] 2003, no pet.). In *Batra*, our sister court held that "if an [out-of-possession] landlord has actual knowledge of an animal's dangerous propensities and presence on the leased premises, and has the ability to control the premises, he owes a duty of ordinary care to third parties who are injured by this animal." *Id.* at 130.[1] Nguy argued that undisputed summary judgment evidence established that he did not have actual knowledge of the dog's dangerous propensities or even that it was present in the leased home.

While recognizing *Batra*'s holding, Do argues it is distinguishable and does not control because Nguy, by changing the lease to allow Benavides to have a dog

---

[1] Our Court has not yet addressed the issue presented by this case and *Batra* regarding the duty of an out-of-possession landlord to a third party attacked by a dog on the leased premises. In *Baker v. Pennoak Properties, Ltd.*, 874 S.W.2d 274, 277 (Tex. App.—Houston [14th Dist.] 1994, no pet.), we addressed a landlord's duty to a third party attacked in a common area of a multi-dwelling premises that was controlled by the landlord, but we expressly declined to decide the duty owed by an out-of-possession landlord of a single-dwelling premises.

under 25 pounds, "affirmatively [took] a duty on [himself] to protect [his] tenants from certain dogs."[2] Do goes on to argue that Nguy breached this duty by failing to inspect the leased premises to verify that Benavides was in compliance with the weight restriction.

We agree with Nguy that *Batra* controls the outcome of this appeal. We conclude that Nguy's addition of the pet weight limit to the lease does not create an exception to the *Batra* test, but instead goes to the control element of that test. *See Batra*, 110 S.W.3d at 130 (holding that for a duty to third parties to arise, an out-of-possession landlord must have (1) the ability to control the premises, and (2) actual knowledge of an animal's dangerous propensities and presence on the leased premises). Even if we assume that the evidence regarding the addition of the weight-limit provision meets the control element of the *Batra* test, Do was also required to show that Nguy had actual knowledge that Benavides possessed a dangerous dog on the leased premises. *Id.* We conclude that the undisputed summary judgment evidence establishes that Nguy had no knowledge that Benavides had a dog on the leased premises, much less that the dog had dangerous propensities. We therefore hold that Nguy owed no duty to David, and that the trial court did not err when it granted Nguy's traditional motion for summary judgment.[3] We overrule Do's consolidated issue on appeal.

---

[2] Do argues specifically that Nguy voluntarily undertook a duty to his "tenants." Although David was not a tenant but a third party at the time of the dog bite incident, we construe her brief to argue that Nguy undertook a duty to third parties present on the leased premises. *See* Tex. R. App. P. 38.1(f), (i); *Mayfield v. Fulhart*, 444 S.W.3d 222, 225 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

[3] Because we have affirmed the granting of Nguy's traditional motion for summary judgment, we need not address the merits of his no-evidence motion. *See* Tex. R. App. P. 47.1; *see also Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989) (when the trial court's order granting a summary judgment does not specify the basis for the ruling, we affirm the judgment if any of the theories advanced are meritorious).

## CONCLUSION

Having overruled Do's consolidated issue on appeal, we affirm the trial court's judgment.

/s/    J. Brett Busby
        Justice

Panel consists of Justices Boyce, Busby, and Wise.